My clock is at nine. I believe it should be at six. Oh, is it six-nine instead of nine-six? So six-six and then three rebuttal. It looks like it's fixed. Oh, okay. We actually put your full time on the clock. Ah, so I can go into the rebuttal time by accident. Try to keep track of your time. Once in a while I try to remind people, but, you know, the clock ticks down pretty fast, so keep your eye on the clock and I'll try to help you out. Okay. I'll try and keep track of that. Good morning, Your Honors. May it please the Court, my name is Jonathan Corbett. I'm here for Appellant Michelle Leuthauser and we're here on a question of whether the government is liable for the intentional torts of TSA screeners under the Federal Tort Claims Act. There are two circuit cases holding that they are. There's one that holds that they are not, and I want to address why that one court went the other way. That court case is Corbett v. TSA, 11th Circuit, Number 1314053. The case was argued by a pro se litigant in his 20s with no formal legal training and, frankly, was not the most sympathetic point of or appellant. The facts of the case were that he refused a body search as a protest of TSA's decision to intensify their standard pat-down and then sued TSA for detention. Well, those facts don't really matter in terms of statutory analysis, does it? Well, I'm trying to explain why this court ended up coming to a negative conclusion. The pro se litigant didn't have access to commercial case law research tools and failed to raise... Actually, let's look at the reason that the court found as it did. It looked at 2680A, any claim based upon an act or omission of an employee of the government. It looked at 2680E, any claim arising out of an act or omission of any employee of the government and then compared those two to 2680, which says, you know, any claim arising out of... And I'm going to skip through, but it says investigative or law enforcement officer that are empowered by law to execute searches to seize evidence or to make arrests for violations of federal law. Why is that separate from the pro se litigant? Why is that distinction in how the statute is worded insignificant? So we'll start with the fact that the 11th Circuit is the only court to ever hold that TSA screeners are not officers of the United States for the purposes of 2680H. The reason why no other court has held... And I don't even believe the other side is arguing it in this case. It certainly wasn't the decision of the court below, is that the 2680H defines investigative or law enforcement officer very clearly. And so it's clear from reading that definition, any employee who's empowered to conduct searches, seizures, et cetera, TSA screeners qualify under that. Well, it specifically doesn't say any employee, right? It says any officer. I mean, I think the way you're reading it, you want it to say any employee, but it specifically says any officer. What work is the word officer doing there? I don't think the word officer does too much there because there's a definition. But to the extent that officer means only law enforcement officer, then we again end up with superfluous words. We end up with investigative or for no reason. But does your meaning require us to read officer as employee, as you just stated? Can be read more narrow than employee, for sure. The cases of Pellegrino and Iverson addressed that question pretty thoroughly and decided that officer might be a little bit more narrow than general employee, however, is not as narrow as law enforcement officer. So if the statute is ambiguous, then which way do we rule? Well, so that's I think why the 11th Circuit got it wrong, is that they did not explore Dolan versus United States Postal Service, which is the case in which the Supreme Court said, look, the FTCA was passed by Congress because Congress intended to broadly waive sovereign immunity. And with that intent, we should construe all of the terms of the waiver of this, of allowing a claim to proceed. But what if I disagree with you on Dolan? When I see Dolan, it says negligent transmission could mean a whole host of negligent acts. But because it's surrounded by loss and miscarriage, we're going to read it extremely narrowly because you have to read it in its context. And when I see Dolan, then I'm wondering, okay, then does officer empowered by law to execute searches, seize evidence, or make arrests for violations of federal law, that to me then in context seems law enforcement officer. I hear the argument. I would say that there's very little way to give all of the words of considering law enforcement officers. And it simply begs the question, why didn't Congress say law enforcement officers? Why didn't they say criminal investigative search, if that's what they meant? There have been plenty of other statutes in which Congress did just that. They were very clear. And in this case, it seems that they intended something substantially more broad. So to the extent that there's ambiguity, I would disagree that there's ambiguity in that it might only be law enforcement officers or not. I think the ambiguity is just, if it's there, how broad, how much more than law enforcement officers did Congress intend? Well, the problem is that there's a pretty common understanding of what it means to be empowered to execute searches for violations of federal law, right? And that phrase seems to suggest traditional police powers, not really routine administrative searches that can be based on lack of suspicion. Your Honor, when I hear the words execute searches, I'm not thinking only of police barging into a house and raiding the place. I'm thinking of any time a government goes and goes through my stuff, goes through my person. TSA screeners are conducting administrative searches, but they're also looking for violations of criminal law. It's a violation of criminal law to carry a firearm through a TSA checkpoint, for example, or an explosive device. We can't say TSA is not searching for that. They absolutely are. You're talking about kind of the layperson's understanding of searches. I'm sorry? You're saying a layperson's understanding of searches would encompass the kind of routine searches that TSA screeners do. A layperson's understanding as well as a legal understanding. If we look at Terry v. Ohio, for example, those kind of brief pat-down searches for stop-and-frisk were considered to be searches. And the purpose of that search is not to find evidence of a crime. The purpose of the search was officer safety. It was basically a type of administrative search. To hold that the searches must mean criminal investigative because, you know, Congress must have intended that or there's context or whatever. Congress just didn't write those words. I see my time has set. I know you wanted to save time. Okay. Good morning, and may it please the Court. Patrick Giacomo on behalf of Amicus, the Institute for Justice. If I may, Your Honors, I'd like to start at the foundation here, which is that time and time again, the Supreme Court has said that statutory interpretation is controlled by the text of the statute. And here, the text of the statute, as enacted by Congress, very clearly provides liability for six types of intentional torts committed by investigative or law enforcement officers, which Congress then went on to broadly define as any officer of the United States who's empowered by law to execute searches, to seize evidence, or to make arrests for violation of federal law. TSA agents clearly fall into this disjunctive list because they execute searches. In fact, that's all they do. Their mandate is to find things that violate federal law, things like explosives, weapons, bottles of lotion that are larger than three ounces, and prevent them from going on airplanes in the United States. They can't find those things if they don't execute searches. And what they do on a daily basis is exactly that. The government, in this case, persuaded the district court instead to adopt a circular interpretation here in which a TSA agent is not a law enforcement officer because they do not search, because only- I agree that there's a lot of abundant case law saying that what TSA is doing is different. It's not a criminal search. Would you agree with that? I would, Your Honor. And I would also point out that the word criminal is nowhere located in the law enforcement provisor. I understand. I'm going to get there. I'll get there. You also understand that these administrative searches were relatively new at the time of the enactment of this statute, correct? That's correct. And if I might- So at the time in 1974, when Congress was enacting this law enforcement proviso, the context that Congress would have been thinking at the time would have been criminal law enforcement or more traditional law enforcement than these administrative screenings. I mean, TSA didn't even exist for another few decades later. There's no question that the TSA didn't exist, but I disagree that this was focused on only traditional law enforcement. At the time, there were a lot of nontraditional officers who were doing searches, for instance, postal inspectors or customs officials. And I think the other key in the context of the history here is Congress, in enacting the law enforcement proviso, was reacting to a new and evolving form of federal law enforcement. But postal inspectors are law enforcement officers. They carry weapons and they actually do investigate crimes. USPIS is correct, but USPS officers are still pulling mail out of Maelstrom to search them for reasons. And there were mail searches going back to the 1870s, where the Supreme Court said, these are searches for purposes of the Constitution. And so I think the context in which the law enforcement proviso was enacted proves that what Congress was trying to do was to broadly define searches and seizures in such a way that it would encompass the evolving nature of federal law enforcement. And as to the TSA in particular, the TSA was created shortly in the aftermath of 9-11. It's been 20 years now, and it's been many years since the first case holding that TSA agents are law enforcement officers under the Federal Tort Claims Act. If Congress thought that was wrong, Congress could change its broad language to narrow it and, for instance, restrict it only to law enforcement searches. But it hasn't done that. And I think another crucial aspect of this here is, in the history, when Congress created the law enforcement proviso, it did so with the background of a robustly available Bivens remedy, and it knew that it was creating... Let me ask you a question. Is one difference between our circuit and the two circuits that have gone the other way, Third Circuit and Eighth Circuit, is that we actually have Foster. They didn't have anything similar to Foster. I'm not familiar with Foster. So I can't... If you can tell me what the holding in Foster is, I'm happy to respond. Sure, sure. You know, Foster says basically any ambiguity with regard to an exception to the exception has to be decided in the government's favor. And let's say I think that execute searches is ambiguous, or I think that officer is ambiguous. Then which way are we supposed to rule? Because we have Foster as a published opinion in this circuit. So I think the answer is found in the Dolan decision by the Supreme Court, which said you don't try to interpret the statute narrowly or broadly. You simply interpret the language in its ordinary meaning. And doing that... Dolan was decided... I'm sorry? Dolan was decided before Foster. That's true, but Dolan is a Supreme Court decision, and its impact here is that it explains that we don't engage in this sort of narrow versus wide interpretation when it comes to the exceptions set forth in the Federal Tort Claims Act. But here also, and this goes against the hypothetical you asked me, Your Honor, but this language is not ambiguous. This language is clear. It's just a matter of policy that the government's arguing, well, we don't think that Congress really meant every law enforcement officer, even though that's exactly what they said. And if that's the concern, then Congress should be the one making that change, not the courts restricting this. And I do think this is especially important now that last term the Supreme Court decided Egbert v. Boulle and greatly restricted, if not tacitly overruled, Bivens entirely, because when it did so, the court's reasoning was, we as courts look disfavorably on court-created causes of action. Congress is the one who's supposed to create that cause of action. Here, Congress has done so in the law enforcement proviso, and for the courts to read it so for any number of reasons, they are going against the same reasoning in Egbert that has more or less done away with the Bivens remedy and would then undercut the fact that Congress thought when it created this proviso that it was providing duplicative remedies for victims of search and seizure abuses by Federal officers. All right. Thank you very much, Counsel. Thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court, Daniel Aguilar for the United States. There are multiple textual indicia within the law enforcement proviso that indicate that the best reading of it is that it applies to traditional law enforcement officers. And we can go through those in terms of the statutory construction. But I think as Judge Cope — Well, there's some textual support for both sides, and I think that's what makes this a difficult case. But you're asking us to create a circuit split, right, if we rule for the government in this case? The Eleventh Circuit did go the other way, but in an unpublished disposition. So the two circuits who have addressed this issue and published on it have both gone against the government. That's correct, Your Honor. In terms of the TSA context, what I would note is that, one, those courts, the Third and the Eighth Circuit, did not have the benefit of this Court's decision in Foster, which I think is important and we should discuss. But I'd also note that outside of the TSA context, as we note in our brief, and as the Pellegrino and Iverson dissents further note, the courts of appeals outside of that TSA context have routinely and consistently held that administrative searches, if all an employee can do is conduct an administrative search, they do not fall within the law enforcement proviso. And that is consistent with Congress's understanding at the time it chose to enact this. It had, you know, contemporaneous bills that would have waived the United States' sovereign immunity for any intentional tort committed by any employee, and it chose not to enact those and instead did something more circumscribed. And what this Court held in Foster — What — Oh, yes, Your Honor. What is the word of investigative? If you want us to limit this to law enforcement officer, that's not what Congress did. Sorry, I'm using that as shorthand, Your Honor. Yes, the Texas investigative or law enforcement officer. And I think — That work is investigative doing, because it's not limiting that whole definition to just law enforcement officers. Yes, Your Honor, and I'm sorry if I'm using that as shorthand. It sort of makes it more colloquially easier. But I would point to is what the Pellegrino dissent cited, the Seventh Circuit decision in Bunch v. United States. There it was considering an arson investigator for the Bureau of Alcohol, Tobacco, and Firearms. There it was a person that the Seventh Circuit noted may be able to conduct a search of an arson scene if there's reason to believe that explosives were used. Now, that's a person who can't make arrests or potentially seize evidence, but they can execute a search pursuant to probable cause. And they said that person may well qualify as an investigative or law enforcement officer under the proviso if they do indeed possess that power, and we remand for some further discovery on that particular point. And that's consistent with the holdings of all the other courts of appeals outside the TSA context that this isn't talking about administrative searches that a USDA inspector might conduct or that even a parole officer might conduct, right? A parole officer can conduct a warrant. That's the Second Circuit decision in Wilson holding that a parole officer who can go into a parolee's home without suspicion, look at what's in plain view, and seize evidence with consent. They still can't make arrests. They still don't execute searches or seize evidence without that. And therefore — But Congress knew those distinctions, right? They can draw the distinction between administrative searches, such as TSA, some parole officers, in the context of, for example, enforcing even regulations against businesses. There are lots and lots of contexts in which administrative searches occur, and that was known to Congress at the time. When we focus only on the text of the statute, I don't see anything in the text that really excludes TSA officers, right? They're called officers. They do searches, albeit administrative searches. Congress could have made those distinctions very clear, and they didn't do so in the plain text of the statute. So how do you respond to that? I disagree, Your Honor. I think the text read in context, right? We look at the statute as a whole with all of its clues. And so, for instance, it's talking about the empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. So what you have there are the powers to make arrests and seize evidence for violations of Federal law, traditional law enforcement authority. But they do. They find evidence, and they seize evidence. No, Your Honor. They're not allowed. Give it back to you? Yes. If — no, Your Honor, this is — That works in my TSA's law. This is the — They take it from me. This is the — And they say, if you want to get on the airplane, you can't get on the airplane, although you're right. They may give it back to you if you don't want to get on the airplane. That's the uncontested evidence that's in the declarations, is that the TSA screener — They execute the searches, right? They execute the searches in that they're looking through your property for items that may be in violation of law. It's not in violation of law, Your Honor. And I think this is important to note. What the TSA screeners are doing is searching for evidence that may pose a danger to passengers or to the aircraft as a whole. It doesn't matter whether the item is completely legal to possess, for example, a lithium-ion battery or a canoe paddle. What they say is, you can't take that on the plane. You have to take it back to your car or leave it with someone or surrender it here. But importantly, the TSA's — And then if they find an item that's prohibited by law, then there's officers on site that they turn the case over to? Yes. Local law enforcement officers. And if there's even a civil violation, it's not the TSA screeners who pursue that. There are other officers that pursue civil violations for TSA. And what Congress did in enacting the TSA was note at Section 114, subsection P, is that TSA can have law enforcement officers. It can designate certain employees to act as air marshals who can carry a gun, make arrests, execute searches, seize evidence. And those are overseen by regulations developed with the Department of Justice and the Attorney General. And notably there, if the Attorney General determines that those particular law enforcement officers, TSA criminal investigators or air marshals, are not performing up to snuff and abiding by the regulations that DOJ has helped to create, then that law enforcement authority is entirely rescinded. So how many — how many administrative — how many — here's my problem. I don't know of any administrative search that allows a government employee to do a body search where they pat you down. They can look at your luggage. They can go to a fire scene and look around and see. If you're a probation officer, they can seize whatever is in plain view. But if they're patting down people, how is that administrative? It's an administrative search to ensure safety. If somebody has, for example, a prohibited item on them, it may be one that they shouldn't be possessing, like a firearm, or it may simply be one that they've forgotten, like a lithium-ion battery in their phone. So the general public has no remedy against a TSA agent that decides to grope somebody? That's not true, Your Honor. I want to make that clear. If somebody is acting outside of their scope of conduct and doing something that is just not called for in the course of their duties, the United States may well say they are not At that point, the United States would not be substituted in under the Westfall Act, and you would have a regular state court remedy against them. TSA does not condone any actions that would be unlawful assaults or batteries. There are internal investigations when certain allegations are made, and I can't get into the name of these recidivists. They're uniformed and badged as officers, right? They have a badge and an officer. I don't think the word officer here is dispositive. Somebody may be. Right. No, I understand that. Sure. But the fact is they're uniformed and badged as officers, right? They are called officers, and they have a badge, yes. And were they uniformed and badged as officers at the time of the statute's enactment as well? At the time of the statute's enactment, there were no TSA screeners. TSA screening — I'm sorry, airport screening was conducted by private companies, and I think that that's a further fact that's helpful to the Court's analysis here. In enacting TSA, Congress still provided that that screening function can be performed by private contractors overseen by TSA. It would be very strange to say that law enforcement functions could be performed by private contractors, but that is the case of many airports, including San Francisco International. The screeners at that airport are private contractors overseen by TSA. And I think, again, you can look to the textual industry here. The certain torts that are listed for which the United States will be liable for, it's not all of the intentional torts. It's assault, battery, malicious prosecution, false arrest. It's things that you would generally think somebody trying to execute a criminal search or a criminal arrest might commit. But things like interference with contractual rights or, you know, slander, the United States does not waive those, even though those might arise in something like an administrative search. And that's why I'd point to pages 23 to 24 of our brief. When Congress was considering the law enforcement proviso, it considered testimony that, you know, we have people out there like Department of Defense auditors or USDA inspectors going to meat plants. Those are tense situations. It might result in fisticuffs, but these are not the kind of investigative or law enforcement officers that we're considering for purposes of this proviso. And all those textual clues, I agree, some judges have reached a contrary result in the Third and Eighth Circuits. A majority of district courts have agreed with us, as has the Eleventh Circuit and the dissenters, Judges Krauss and Judge Grinder's dissents. And what I note there is that, at a minimum, what I think that demonstrates in our conversation here today demonstrates is our interpretation is, at minimum, reasonable. We think it's the best one, but at minimum, it's plausible. And what the Supreme Court said in FAA v. Cooper is that ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the government. And that goes — the ambiguity there goes to the scope of the potential waiver. And that's why I think this Court's decision in Foster is so important. Foster, as you — as you have noted, was considering an exception to the exception, saying that, normally, the United States is not liable for any damage in the detention of goods. But there's an exception to that, saying we do waive sovereign immunity if the damage came about and the goods were detained for the purpose of forfeiture. The Third Circuit pointed out that if TSOs do not fall within the definition of law enforcement officer, then, really, plaintiffs, such as this one, will be left without redress. Does the government concur with that assessment? No. As is explained, if the employee is not acting within scope, then there's not going to be an FTCA claim. There's going to be a usual state court claim against them. I would note that Plaintiff here brought a Bivens claim in district court. They have not raised that here on appeal. It's not before the Court. If the Court wanted to consider a Bivens remedy against that, we would litigate and brief that position. But it's not here today. But what I would note there, and that is in Foster, this Court said, well, the goods there were seized. The United States told the plaintiff, we are going to seek forfeiture of these. They filed a forfeiture action. But ultimately, they weren't — I'm assuming that they tried to do a Bivens claim. The government would fight that. I assume so. In Egbert v. Boulay, the Supreme Court explained how the Bivens analysis should work. We think there are good arguments why that would be a new context to which it should not be extended. But, again, that's not the question here today. Are you going to take inconsistent positions when that happens? No, Your Honor. We have — I've — I personally argued the Bivens claim in the Third Circuit and in Vander Clark v. TSA. I think those arguments are well taken, and I would advocate for the Court to rule. Yeah. I would assume that that's what the government would say, is that they don't have a remedy under Bivens. And with regard to your statutory interpretation, that would bar them from an FTCA claim as well. And what I would say to that is if you think that the law enforcement proviso should be read in light of the absence of a Bivens remedy, that's not the way that the statute or analysis should be going. We should be using the traditional tools of statutory construction. And one of them is this Court held in Foster at page 1079, is when you're interpreting an exception to the exception there — So is your position that, you know, if Bivens gets, you know, chipped away, there just won't be a federal remedy and plaintiffs should just be satisfied with a state remedy? Is that what your argument boils down to? That's what it sounds like. No, Your Honor. If I can just delineate here. So first we have the question of if there's any remedy at all. And what I've said was if a TSA screener is acting outside of their scope of employment, there will not be an FTCA claim because they will not fall within the Westfall Act, right? And so, therefore, State court — State court remedies would usually lie. If they are acting within scope, very often the United States will be substituted in as a defendant, and then you have the FTCA's law enforcement proviso. If a plaintiff wants to pursue a Bivens claim, they could. I think there will be an uphill battle. I think there are very good arguments that an inferred cause of action under the Constitution should probably not lie there, but that's not before the Court. And what I would say is when you're reading the words that Congress has enacted in the law enforcement proviso, what this Court held in Foster is any ambiguities, any plausible reading that could support an application of sovereign immunity is the one that we must adopt. That's at page 1079 in the last paragraph of the Court's opinion. And I note that in Foster there, there was a dual purpose of the seizure. It was for detention pursuant to a search warrant and for forfeiture. And what the Court said is, like, there is some support for a narrow reading of the rewaiver of sovereign immunity, and that was sufficient. Here, there's more than narrow support. We have multiple textual indicia. We have what Congress was contemplating at the time, and we have — No, you mentioned Cooper, but what about in Millbrook? The Court wasn't looking for a plausible construction resulting in immunity. I think in Millbrook there, it was just saying once you satisfy the law enforcement proviso, it doesn't matter whether or not the particular tort occurred during your performance of those particular duties because there wasn't a textual ambiguity there. I think the problem with plaintiff's limiting principle, which I take to be, you know, personal touching is different, and therefore there should be an exception for it, is that's fine as a policy matter, but as the Pellegrino dissent noted, there's no textual support that would differentiate a personal touching search from any other kind of administrative search. And if there is going to be such an exception drawn where the United States would waive sovereign immunity or provide other remedies, that is really something for Congress to consider and reweigh. It's hard to do in terms of statutory interpretation here, where we are limited by the words of the statute rather than by policy judgments. And that's why Foster came out the way it did. I think that's why the district court came out the way it did here. And we would ask that this Court affirm. Thank you, counsel. Thank you. Your Honors, I'd like to quickly address just three points on rebuttal. The first is whether other remedies are available. I actually just fought the Bivens matter in the Fourth Circuit. The case was Dyer v. TSA, and the government, as you expected — I'm sorry. I'm having trouble hearing you. I know you have two minutes, but if you can slow down just a little bit. The government, as you expected in that case, did argue that Bivens remedies do not apply to TSA screeners. And I think that, to be candid, they probably have the better argument under current Supreme Court precedent. In this case, my client was sexually assaulted by a TSA screener. And the government argues that if a TSA screener deviates from their duties, then maybe they'll not issue Westfall certification to allow a state court to proceed. If they didn't do it here where my client was digitally penetrated by a TSA screener, when will they do it? There will be no remedy for these sexual assault victims if the court denies relief here. Oh, no. There'll be a remedy. It'll be against a guy that makes X dollars a year that you'll never be able to recover from. There'll be no judicial remedy. There's no remedy. Was a state criminal case for assault or battery — was a complaint made? In general, in my experience, when someone complains of sexual assault by TSA, the local police refuses to take the report. So a report was not made? I don't remember. I believe that my client actually did attempt to speak to a local sheriff that was standing next to the booth and was, you know, was referred out. If I may just address the other two points very quickly. Very quickly. Thank you. Foster — the difference in Foster is that Foster held that the specific language of the exception they were considering led them to hold narrowly instead of following Dolan's command. In this case, there's no language that forces the Court to make that conclusion. The last and final point is that the government suggests that investigative or might cover, for example, ATF technicians that come to a crime scene to investigate. The problem with assuming that Congress intended people like that is that ATF technicians will never commit intentional torts like that. They're never going to commit a battery because they're not coming upon a person. Congress intended it more broadly. I thank the Court for considering. Thank you very much to all counsel for your very helpful arguments in this interesting, difficult case. The matter is submitted and a decision will be issued in due course.
judges: NGUYEN, KOH, Bataillon